And our first case is SEC v. American Pension Services, and I see counsel are ready. We'll hear from the appellant. Thank you, and good morning. May it please the court. My name is Christian Beckett, and I represent Ms. DeYoung. My intention this morning is to address the salient or And then reserve a few moments for rebuttal if necessary. Approximately three minutes. So I will rush through as best I can. The legal principles in this case are not complex. The one thing that does make it complex is the existence of the receiver. The salient question that we're asking this court to consider is whether a court must enforce its own order. The facts of the appeal have been outlined for this court to review, but the receivership in this case, subject to the court's review, entered into several contracts and agreements in order to collect funds or money for investors or pensioners who invested in a company, APS, who were presumptively victimized by the actions of its president. As they collected that money, and they entered into these agreements, they had to go back to the court to get its permission, thereby giving the court its equitable power to review the contract to make sure that it was fair to each of the pensioners, each of the investors, and each of those victims. The court, in equity, sat in review of every single one of those contracts and either blessed it or sent it back. In this case, the SEC and the receiver entered into an agreement with Ms. DeYoung. A condition of that contract was that the court would accept it or the contract would be void. If the court accepts it, at that point, it must have been accepted by all the parties that it was equitable to the pensioners. Now, what... Before you get too far into this, is this an equitable issue, an equitable case? That is, you're seeking specific performance. Is that right? Yes, Your Honor. And so that does affect our scope of review, does it not? It does. So what is our scope of review? We believe that it's de novo. However, if the court does accept the arguments that it is abuse of discretion, that it is based on the equitable principles, that we still believe that the court did abuse its discretion in its finding. And I was giving the background here that there is this equity argument, but the equity existed up until the time when the court accepted the agreement between the parties. That after that, the review of the contract needs to be by legal principles that support contract execution, formation, and ultimately performance. But still, as you quite clearly pointed out, I mean, you are under the umbrella of a receivership. And so there's still equity at play here, is there not? There is. It isn't just a straight one-up contract case. And what I'm asking this court to do is outline a clear set of principles that say that the court sits in equity, but even in equity, that there must be legal principles that apply so that everyone who enters into a contract with the receiver can expect that the receiver, and ultimately the court if asked to, will enforce an agreement and follow the terms of that agreement. If it was, to use a colloquial phrase, loosey-goosey, that we're not sure what's ultimately going to happen, no one would enter into agreements with receivers at all. And that is not in the favor or the interest of anyone who may be subject to a receivership. So does your client want to recover anything that the receiver has actually recovered? Like these receivables and collectibles, has the receiver actually collected on these? Or is your client trying to just have the receiver turn over things that were never recovered during the receivership? There's two parts of that question, let me see if I can unpack it a little bit. My client will not be able to collect anything that has already been collected. Okay, so does that mean you're giving up on anything that's already been collected? Absolutely. She would not be able to stand in the position of being able to collect something where there's already an agreement to collect on it. Other principles apply to that issue. Regarding the abandonment of collectibles and receivables here, specifically, the receiver has stated that it is not economical for her to review or to collect those, but that doesn't mean that it wouldn't be economical for my client to go out and try and collect them. And that's what this case is about. That's what she wants, right? Yes. The opportunity to enforce those debts. The opportunity to seek whatever she can get from those collectibles and receivables which may be available. So what happens to those collectibles and receivables if you lose? Do they just go, I mean, they're just nobody ever gets the money for them? That's exactly our point, is that the receiver's not collecting them. It doesn't go to the benefit of the investors or the pensioners. It doesn't go to the receivership. It doesn't go to the court. It goes nowhere. They die. No one can execute anything against them. So why is it that the receiver is really standing up so adamantly against turning these over, pursuant to the terms of the contract, to Ms. Young, except if they had never intended? Well, I think part of the theory that I'm divining from what was said by the district court in the arguments below is that there is some effort here of finality, like to terminate the receivership, say it's over, we're done here, nobody's going to come after you after this, and if she is permitted then to pick up on these receivables, it's not over. It just continues and continues. Is there some concept of that, of closing out and being final? The fact of whether or not it's final is determined by the judge entering a final order on the receivership. Contracts, performance, possessory interests and rights exist outside of the receivership. And was that a theory that the that the district court relied on in denying your motion? Was it a theory? Right, was it? Why did the district court deny your motion? Well, there were twofold reasons why the, well, we believe the district court denied the reason. Primarily is, and this was when I asked the district court specifically, when he said that there was prejudice. Yeah, and I said, can you please describe what that prejudice is? And the court specifically stated, let me be clear, even if I was told to, I still would not have these, I'm now paraphrasing, I don't know if I have the exact quote, it's in the brief, I would not give these to Misty Young, okay? That is not in the legal scope of the argument, fair. The court approved the settlement agreement, right? The receiver will conclude, whether or not the receivership concludes, whether or not Misty Young is collecting on these receivables is irrespective of that. The receiver could have assigned these to anyone at any point in this receivership. These receivables, do they involve persons who were defrauded, allegedly defrauded, either by Misty Young or her husband? And is that the problem here? Is that the pain that the district court is suffering here? I don't believe so, your honor, and I believe that all of the collectibles and receivables were, a list of those were turned over to the receiver. I don't believe anybody on that list is a specific defrauded investor. Okay. The concern is that the investors don't get to get the benefit of Misty Young's efforts in collecting those funds. So that's the, that's the rub, so to speak. That is the rub. Yeah, but your position is they're not getting it anyway. They will not get it anyway, number one. And number two, even if they would have benefited by them, that was the receiver's responsibility granted to her to get. Now there's two parts of this argument, and we want to be clear, is that we're arguing that the receiver failed under the terms of the condition, or under the terms of the contract, to even notify the court properly that they wanted to pursue them. Isn't that the, that kind of the basis of your claim, is that failure to notify? And isn't that a big part of why the district court rejected your argument on waiver grounds? Because you could have made that long before you did, when you filed your first motion to enforce, after that should have already, that, that activity should have already occurred. The receiver should have sought that authorization before you ever filed your first notice or motion to enforce. And so it's on waiver grounds that I thought the district court really focused, as well as the prejudice. The court did a focus on waiver, and the facts of the case are acrimonious between Misty Young and the receiver. That is that the receiver continued to complain that Misty Young was utilizing the court system to stall out the receivership. So on that first motion, the court came in and said there was a condition precedent which needed to be met before enforcement action could happen. There were several things, or a couple different things, under the contract which were stated as conditions precedent. Those weren't satisfied until substantially later. Yeah. There was also an issue. But you were complaining about the notice already at that point. And you could have made this same complaint then, and alerted the district court to your problem, which was this lack of authorization to proceed. That could have been made at the time you made that first complaint, and had some complaints about the notice, but not that particular complaint. That was what the district court had a problem with later. I was not counsel on the case originally, but I do believe that the original, the first motion to enforce, did include a notice that this was untimely. That what had happened was one, untimely. It was filed three days late. And then it wasn't even filed correctly because it was a notice and not a motion. And what was contemplated under the agreement was that there would be a motion that would indicate, hey, we need permission court to go after these collectibles and receivables, and to get permission from the court. And the court very you failed. Okay? Now, when we're looking at the timeline of events, and I know I'm getting short on time here, and so I want to make sure that I can answer all your questions. The timeline of events was that immediately after the settlement agreement was entered into, Misty Young's counsel filed an interpleader action that muddied the water here, and froze the receiver's hands for turning over anything, including half of her, half the money that was available to her pursuant to that agreement, until December of 2017. And then as soon as that was turned over to her, and we, all of the conditions proceeded had been met at that point. So as to not muddy up the court, and slow down, and incur additional costs for the receiver, we're talking about a short period of time here, 12 months, 17 total months between the two motions. And the the order that came in was seven months after that first motion was filed. We're not talking about a substantial amount of time where the receiver was like, oh great, she's not going to be trying to collect these things. She doesn't really want these. There's no justifiable reliance, and even if there was, even if the receiver had gone out to collect those receivables, which we don't know that she did, because she hasn't provided us any of that information, even if she did, they are now abandoning everything they didn't collect, and therefore there is no harm to anyone in this case. Not the receiver, not the pensioners, not the court. The only harm here is to Ms. DeYoung, and counsel coordinated and talked with the receiver regularly about the fact that there was these things that were still left done. So to say that she had waived her rights, that's not the end result that one may want, but it's not fair, and it's not legal. So in the scheme of things, I mean, 17 months is actually quite a bit of time because the receiver, one of the things receivers charged with is expeditiously collecting and distributing money to the victims of a crime, right? Or the allegedly defrauded investors. Right. And so 17 months, I mean, that's a lot of time for the receiver to be trying to wrap things up. Without a question, and again, as to your point, Your Honor, is all of the collectibles and receivables that Ms. DeYoung is asking to be turned over to her are those which have been abandoned or which the receiver chooses to abandon and will not try to collect on. And there's... True, but I'm wondering, I mean, the receiver said, I mean, the receiver took the position early on, I'm going to pursue these, and I'm just wondering, I mean, doesn't the receiver have to elect not to pursue them in order for your client to be entitled to them? And I think there's an argument the other way on that also, but... I think it's two sides, and I will reserve 30 seconds, but there's two sides to this question. She was late, but even if she, enforced it right then, right, or chose to wait until she absolutely abandoned them, the rights don't change for the receiver. And even if the receiver had collected that money and created a benefit, we're not, she's not trying to collect those. The only thing that she's trying to get is the receivables that are abandoned and have no benefit to the receivers. And I've got 15 seconds. Thank you. Thank you. Good morning. May it please the court. I'm Melanie Vardabedian, counsel to Diane Thompson, the court-appointed receiver of American Pension Services, and the appellee and cross-appellant in this matter. This court should affirm the district court's denial of Ms. DeYoung's motion to enforce a settlement agreement. The district court did not abuse its discretion by determining that Ms. DeYoung's effort to enforce a settlement agreement on the eve of the court's termination of this receivership was too late. Second, the court could also affirm the denial of the motion on the alternative grounds that Ms. DeYoung did too little. Ms. DeYoung did not meet her burden of showing that the items requested meet the definition of a collection, a settlement agreement. In any event, the settlement agreement did not obligate the receiver to assign any assets or interest to Ms. DeYoung. And the court may also affirm on these alternative grounds. So do you agree that the items that Ms. DeYoung is seeking are are collectibles and receivables that the receivers not ever going to get? The receiver pursued the collectibles and judgments. I understand that. That's not my question. My question is, do you agree that the receivers never going to get those? I would agree. Okay, so why does the receiver care? The receiver cares, your honor, because in order in order to now at this late stage where the receivership has already been terminated, we would have to go back to the district court, reopen matters, figure out a mechanism by which these could somehow be assigned to Ms. DeYoung. Okay, so that is not. But we got to look at it how it was two weeks before the court closed it. I mean, we can't say, gosh, well, we're on appeal now. It's already been closed. We're gonna have to go back. We have to, don't we have to look at it at how the posture was before the district court? Well, she filed her motion three weeks after we filed our motion to terminate. Right, but it wasn't terminated yet. Correct. Okay, so you wouldn't, at that time, you wouldn't have had to open anything. Correct. We would have had to prolong and that really was the basis. And I think Judge Briscoe really hit the nail on the head here where this case is about finality. This is about a four-year receivership where frankly Ms. DeYoung sat on her rights. Your honor observed 17 months went by from the time that the orders were entered in the discouragement case in December 2016 upon which Judge Shelby had denied the first motion to enforce as moot on the grounds that those orders hadn't been entered. They were entered in December 2016. 17 months then go by before and three weeks after the receiver filed her motion to enforce. Does Ms. DeYoung come forward and say wait a minute, wait a minute. I want these collectibles and judgments. That's, that's a problem. That's too late. The, the receiver, It is a problem, but I mean I'm sensing that the receivers position is, is an attempt to do justice to keep someone that she doesn't think is deserving of the assets from getting them. Not at all, your honor. Not at all. The receiver and the judge, the district court judge, looked at equitable principles. We were under the umbrella of an equitable receivership matter and simply determined that it was too late. So when the court refers to prejudice, what's the court talking about there? The prejudice that the receivership would suffer is the reliance on Ms. DeYoung's sitting idle and not pursuing her claim and in reliance on that the receiver expended valuable time, resources, and energy and money investigating and pursuing these claims. Well, the briefing, the briefing argument I thought was pretty good to say well, that's the receivers job is to pursue and enforce these claims. So to say that the receiver was working along and somehow that's a detrimental reliance, that was what the receiver should have done and all the motions in the world by Ms. DeYoung wouldn't have stopped that progress. All, all Ms. DeYoung wants, I think, are basically the leftovers, right? Well, in a word, they are, they are judgments that are expired. They are stocks and securities and random assets, frankly, which the district court said I can't even really tell what these are. These aren't adequately described to me by Ms. DeYoung. But, so why, why, why does that matter? You know, let, let her, you know, shift around and see if they are collectible. Maybe they are just a stack of paper. Your Honor, I think in order for her to be able to pursue these, it would cause additional harm to the receivership. We would have, there would be confusion about why, and the district court noted this, why is Ms. DeYoung out, going out and trying to pursue assets on behalf of APS, a dissolved and terminated entity? Further people are going to be harmed by this. The judgments, many of them are expired. Many of them aren't even in the name of American Pension Services. The first one on her list is in the name of another entity with the abbreviation of APS. There would likely be additional documents that might be needed, people that would continue to be calling the receiver and wondering why is Ms. DeYoung out trying to collect on this. They're just, it would just prolong things. It would increase the time and expenses of a receivership that's gone on for four years and frankly for a claim that she should have brought much sooner. Well, the receiver, the receivership could close and that's that, and the abandonment of these items to Ms. DeYoung, she could go ahead and pursue them. I mean, I don't understand how her pursuit of these leftovers affects the termination of the receivership. Because people would be likely coming back to the receiver, back to counsel to receiver, with questions and confusion, needing documents, potentially depositions, additional information in order to defend their claim. So, so why, I mean, why does that matter? She agreed to that in a settlement. So if they would have, say they would have done it two weeks before you moved to close the receivership, I mean all it's doing is you say, well they would have called her, but she signed an agreement that would have had that consequence if they would have come in just shortly before now. Well, no, because the... So I don't see the harm. The agreement gave the receiver the option to pursue the assets or to abandon, and in this instance she elected to pursue them. Well, ultimately she abandoned. She made that, she said I'm gonna pursue them, and then she made the determination that if they were not either A, collectible, B, it was there were not enough money to justify it. I mean, that's, that's abandonment. You're giving it a very strict reading, aren't you? No, I don't think so. I mean, I think the plain language of the agreement is clear that the receiver has the option of either pursuing them or abandoning them, and in this instance she did pursue them. But that kind of goes to the, the alternative basis, which is that the agreement itself doesn't even actually obligate the receiver, looking at the plain language of the agreement, to turn their... It may not obligate, but it has some pretty clear language about what, the fact that Michelle requests the receiver to turn over to her in the event that the receiver not, not, not, elects not to pursue these assets. She requests that these be turned over. It doesn't on the, on the flip side mandate that the receiver turn over the assets, but certainly just in terms of fairness, the receiver understood that if she wasn't going to pursue assets that Misty Young wanted her to turn those over to her, and that didn't happen. It didn't, well, it didn't happen because the receiver chose to pursue the assets. I mean, the receiver's position is that she didn't abandon the assets, that she, by filing her notice, indicated her intent to pursue, and that because Ms. DeYoung did not timely challenge that then, that her challenge was untimely, and that the assets, they dissolve, they go away, just along with the... So they're not abandoned. They were just, they were pursued to no good end or no result. Correct. But not abandoned. Correct. And I want to address, so this clause in the agreement really is kind of meaningless, that she requested the receiver to turn over these collectibles in the event the receiver elects not to pursue them. Once the receiver elects to pursue them, regardless of what happens with that, if she's successful, that just doesn't have any meaning then. I'm sorry, Your Honor, which clause? The collectibles and judgments. Michelle DeYoung has an obligation to provide the receiver in writing a list of collectibles and judgments. This is paragraph 7, and she requests the receiver to turn over them over to her in the event the receiver elects not to pursue them. So what does that mean? So it means that Ms. DeYoung can make a request by submitting her list of collectibles, and then she may elect to pursue or abandon. In this instance, she elected to pursue. And anything left over isn't abandoned. Correct. And this provision doesn't have anything to do with anything left over, is what you're saying then. I guess it seems kind of meaningless. She doesn't have any right to those, anything that's abandoned. If the receiver chose not to pursue the assets, then they would be deemed abandoned. And then we'd be arguing, I guess, over whether the settlement agreement, what the mechanism is. It's an all-or-nothing kind of thing. For which she would be able to be assigned or otherwise turned over to those assets. What if? It sounds like your argument's sort of that the receiver elected to pursue them, but then didn't. Oh, no. She absolutely elected pursue, and that is what the district court... No, I understand she elected to pursue, but then she didn't pursue them. She did, Your Honor. She made determinations that they were old, uncollectible, too little money to pursue. I mean... Your Honor, in the papers, in the supplemental appendix at 147, we list out all of the efforts that the receiver took to pursue collections. She undertook extensive efforts, actually, and the district court noted these in his order. She consulted with her forensic accountants. She consulted with a broker on the stock. She engaged in independent research. She engaged a collection agency, Express Recovery Services, which is a professional collection agency in the business of engaging in collection efforts. They pursued each of the judgments and the litigation on Ms. DeYoung's list, and so the receiver took her duties very seriously. She did pursue, by doing all of these various activities, the items on Ms. DeYoung's list. But going back to the prejudice, and I think going back to this issue of finality, the second way that the court held that the receiver would be prejudiced is because addressing Ms. DeYoung's motion at the late stage would have required the district court to basically suspend everything after four years of a receivership to have a lawsuit inside of a lawsuit. So why would there have been a lawsuit? How is it the receiver fulfilling her duties to the estate to engage in a lawsuit to stop someone from getting assets under a settlement agreement that she deemed didn't have any value? How is that? I mean, how's that fulfilling her duty? The court would have had to have adjudicated Ms. DeYoung's claim that she was entitled to the collectibles and judgments where the receiver had taken the position that she had pursued them and that the assets had not been abandoned. I mean, it seems to me it could be perfunctory that they would show up and say, Judge, we had a settlement agreement. I agreed if I elected not to not go after these assets that I'd give them to Ms. DeYoung. I've looked into them. I don't think they're worth anything. She still wants them. I want to give her an assignment. And I can't imagine the court wouldn't have said fine. I mean, you make it sound like we're gonna have a two-week trial over these assets that your client says are worth nothing, and I just can't see that that would be the case. Well, Your Honor, Ms. DeYoung would have had to have come forward and show that the items on her list are collectibles and judgments, but she actually aren't looking closely at the items on her list. Would she if everybody agreed they were? I'm sorry? I mean, do you disagree with her? Do you contend that the things she had on her list are not? Because you know what they are. We contend that they are not collectibles and judgments. Okay, but you just said you were pursuing them. We were pursuing them because we were pursuing, we were in good faith trying to go by the terms of the settlement agreement in order to pursue items that were on Ms. DeYoung's list in order to see if there was any recovery there that would ultimately benefit the 5,500 defrauded investors as a result of Ms. DeYoung's husband's fraudulent scheme. Is there, I'm looking back again at this agreement, and maybe there's a time timeline cut off that is involved. If the receiver fails to timely pursue an identified collectible or judgment, excuse me, within 60 days, then the receiver shall be deemed to have abandoned the collectible or judgment. Upon request within 10 days after the receiver abandons any collectible or judgment, Michelle may request any documentation, etc. So it's a timing thing, right? So you have the 60 days for the receiver to act, and if the receiver does not, they're deemed abandoned, and then within 10 days, there's another deadline after the receiver abandons, then she is to request. Correct. Where are we in that time frame? So the receiver filed her notice, and she's been pursuing the assets, and that's where we are, is that the assets were pursued, and then Ms. DeYoung did not come forward with her claim until... So there were none that were abandoned, then, according to the terminology of this agreement? Correct. We don't believe that any... Because if you pursued them all, then there was nothing that was deemed abandoned. Correct. Okay. I just would like to touch on one thing. Ms. DeYoung... You're out of time. I ran you out of time. Oh, either of you have... Pardon me. You have any questions? That's all right. Thank you. Thank you. I apologize. If I may, for that remaining 15 seconds, Your Honor, there was a couple things that came up. The contract term wouldn't have any meaning if the receiver could just say, I want it, and nothing would happen. It would have no meaning. That doesn't make any sense. Regarding the timeliness... So you're saying no timely pursuit occurred within the 60 days? It did not. It was late when they provided the notice. Negotiations, and with the demand... The demand didn't mean a filing with the court. It meant, hey, receiver, give them over to us, and that ongoing dialogue happened. And for them, for the receiver to say that this was not timely, again, 12 months after the receiver released one of their claims, again, we're at a point where the intervener action interfered with turning over any of these assets anyway. The request was made again, and again, and again, and it wasn't until January 8th, 2018, that the receiver actually provided a letter from this collection company that said, hey, it's not worth it for us to go after these, and therefore we're abandoning them. They actually used that term. So at this point, when they say, hey, look, as long as we pursued them, that's not abandonment. I think, as Judge Carson noted, that that just doesn't make any sense, is that you abandon when you actually give up your rights to further collect. And so the receivers argument that they pursued them, and therefore under the terms of the agreement, that's not abandoning them. We have your argument. Thank you. Yep. Thank you. Thank you, counsel, for your arguments this morning.